907 So.2d 998 (2005)
Siedrick RAIFORD, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01660-COA.
Court of Appeals of Mississippi.
April 19, 2005.
Rehearing Denied July 26, 2005.
*1000 Phillip W. Broadhead, Oxford, David L. Tisdell, Tunica, attorneys for appellant.
Office of the Attorney General, by Jean Smith Vaughan, attorney for appellee.
Before LEE, P.J., MYERS and CHANDLER, JJ.
CHANDLER, J., for the Court:
¶ 1. A Tunica County jury convicted Siedrick Raiford of the murder of Regina "Shay" Henley. Raiford appeals, and argues that (1) the trial court erroneously limited his cross-examination of a witness in violation of his Sixth Amendment right to confrontation, and (2) the trial court erroneously denied his motion for a new trial because the weight of the evidence did not support the jury's verdict. We find no reversible error and, therefore, affirm Raiford's conviction and sentence.

FACTS
¶ 2. The following facts were adduced at the trial. In July 2001, Regina Henley moved out of the residence she shared with Raiford and their two children and into an apartment in Robinsonville, Mississippi. Henley had been romantically involved with another man, Daniel Millbrooks, for several months before the move. On the night of July 8, 2001, Henley was shot and killed outside her apartment building.
¶ 3. On the night of July 8, several of Henley's friends were with her in the apartment: Kyara Johnson, Millbrooks, Linda Davis, Keith Brooks, and the children of Henley and Johnson. That night, Henley and Johnson left the apartment to go to the store together. They walked down the exterior stairs to the ground level of the apartment building. When they emerged from the breezeway and reached the sidewalk, Henley grabbed Johnson's shoulder and exclaimed, "Oh, s---, Oh, s---!" The two turned around, and Kyara saw Raiford standing nearby with a black revolver pointed at them. Johnson thought Raiford had emerged from behind the stairs. Raiford told Johnson to move, and Johnson and Henley began running away. Raiford fired one shot and Henley fell to the ground, dragging Johnson down with her. Johnson got up, ran back into the breezeway, and began screaming for help. She looked back and saw Henley lying on the ground. Raiford was standing over Henley and pointing the gun down at her. Raiford pulled the trigger three or four times, but the gun only clicked. Henley turned her head away; Raiford pulled the trigger again, and the gun fired. Raiford left the scene. The autopsy revealed that Henley died from a gunshot wound to the left side of the head. Henley also had a grazed bullet wound to the back. The trajectory of that *1001 wound indicated she had been bent over and running away when she was struck.
¶ 4. Raiford testified that Henley had called him that night and asked him to come over so they could discuss a reconciliation. He said he went to the apartment with a gun because he was frightened of Millbrooks, who had previously threatened him during altercations concerning Henley. Raiford stated that, as he approached Henley's apartment building, he saw Johnson and Henley outside, but also saw Millbrooks standing underneath the stairs. Millbrooks was holding a gun. Thinking that Millbrooks was about to shoot him, Raiford fired one shot in Millbrooks's direction. Raiford saw Henley fall, became scared, and ran away. He drove to Memphis, returned the gun to its owner, and turned himself in to the sheriff's department.
¶ 5. Raiford's trial testimony contradicted a statement that he gave to Detective Clark upon turning himself in. In the statement, which was admitted at the trial, Raiford said that, after seeing Millbrooks under the stairs, he and Millbrooks argued. Millbrooks left and returned shortly with a gun and the two began tussling. Raiford retrieved a gun from his car. On his return, the two resumed tussling. Millbrooks reached for his gun and pointed it at Raiford. Raiford fired once or twice at Millbrooks, panicked, and ran away. At the trial, Raiford testified that, in fact, the physical altercation with Millbrooks did not occur. He testified that he had two confrontations with Millbrooks in the days before the shooting. In a confrontation two weeks before the shooting, Millbrooks produced a gun, and in a confrontation on July 6, Millbrooks stated, "You know I keep a pistol with me. You know what I'll do."
¶ 6. Johnson, Millbrooks, Davis and Brooks testified that they had no knowledge of a phone call from Henley to Raiford that night. Johnson testified that Millbrooks had remained in Henley's apartment when she and Henley left to go to the store and did not come outside until after Henley was killed. Millbrooks stated that he had remained in the apartment until he heard shots fired and Johnson screaming, at which point he came outside. Linda Davis and Keith Brooks also testified that Millbrooks had been in the apartment with them when they heard shots fired. Terry Reed testified that he had seen a black revolver in Raiford's car on the morning of July 8.
¶ 7. The trial court instructed the jury on the theories of murder and self-defense. The jury found Raiford guilty of murder, and the court sentenced him to life in the custody of the Mississippi Department of Corrections.

LAW AND ANALYSIS

I. THE TRIAL COURT ERRED IN COMPLETELY FORECLOSING AN ENTIRE AREA OF INQUIRY ESSENTIAL TO THE DEFENSE, THEREBY DENYING THE APPELLANT'S RIGHT OF CONFRONTATION BY SUSTAINING THE PROSECUTION'S OBJECTION TO CROSS-EXAMINATION OF DANIEL MILLBROOKS AS IMPROPER IMPEACHMENT.
¶ 8. Raiford avers that, on several occasions, the trial court unconstitutionally violated his right to confrontation of witnesses by restricting his cross-examination of Millbrooks. The right to cross-examination is secured by the confrontation clause of the Sixth Amendment to the Constitution of the United States, made enforceable against the States by the Fourteenth Amendment. Black v. State, 506 So.2d 264, 266 (Miss.1987). The right *1002 is independently established by Article 3 § 26 of the Mississippi Constitution of 1890, and has been considered to be co-extensive with the limits of relevancy. Id.; see M.R.E. 611(b). While the scope of cross-examination is generally broad, "the trial court in its discretion has the inherent power to limit cross-examination to relevant matters." Mixon v. State, 794 So.2d 1007, 1013(¶ 20) (Miss.2001); see M.R.E. 611. We review the trial court's relevancy ruling limiting cross-examination for abuse of discretion. Zoerner v. State, 725 So.2d 811, 813(¶ 7) (Miss.1998). For error to be predicated on the admission or exclusion of evidence, the ruling must have affected a substantial right of a party. M.R.E. 103(a); Mixon, 794 So.2d at 1013(¶ 20). A violation of the defendant's right to confrontation is subject to harmless error analysis. Earl v. State, 672 So.2d 1240, 1243 (Miss.1996) (citing Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).
¶ 9. Throughout his brief, Raiford complains of various limitations on his cross-examination of Millbrooks. The trial transcript reveals that, in fact, Raiford was never restricted from asking several of the questions which he now complains were barred. Raiford avers that he was unable to question Millbrooks about his whereabouts after the shooting; the transcript shows that he thoroughly examined Millbrooks on this issue without objection by the State or limitation by the court. Raiford complains that he was prevented from asking whether Millbrooks had been investigated as a possible suspect in the case. But, the transcript shows Raiford asked Millbrooks this question and Millbrooks answered that, to his knowledge, he was never investigated. Raiford argues that he was restricted from asking whether Millbrooks had a gun on the night of the killing. In fact, Raiford asked this question twice and Millbrooks answered in the negative both times. Since Raiford's assignments of error are contingent upon facts which did not occur in the lower court, they are without merit.
¶ 10. Raiford also argues that the trial court improperly prevented him from asking Millbrooks if he had been arrested on the night of the crime. After the question, Millbrooks answered, "No. For what?" The State objected. The trial court sustained the objection as improper impeachment of the witness, and instructed the jury to disregard the question and Millbrooks's response. Raiford claims this ruling was error of a constitutional magnitude. But, the record shows that the State asked an almost identical question on redirect examination:
Q. Okay. Now, just to be clear, were you ever arrested?
A. No.
Q. Were you ever a suspect?
A. No.
¶ 11. Thus, the State elicited the same information on redirect examination that Raiford was barred from eliciting on cross-examination. Raiford remained silent for this question and answer and did not request re-cross examination of Millbrooks. Raiford's appellate argument is that the lower court's restriction of his questioning of Millbrooks about an arrest was unconstitutional because the jury never heard Millbrooks's answer. Since the jury actually heard the question and answer, Raiford suffered no prejudice from the restriction on cross-examination. If Raiford had desired to ask follow-up questions based upon Millbrooks's answer, he could have requested re-cross examination, which is discretionary with the trial court. Whitehurst v. State, 540 So.2d 1319, 1325-26 (Miss.1989). This argument is without merit.
*1003 ¶ 12. Raiford also contends that he was improperly restricted from asking Millbrooks if he had owned a gun before Henley was killed. The following exchange occurred:
Q. Do you own a gun?
A. Yeah, I own one now, but I didn't have none that day.
Q. What kind do you own?
A. A 9mm.
Q. I'm sorry?
A. 9mm.
Q. Okay. Now before that, have you owned a gun?
By [the State]: Your Honor, I object to the relevancy of this.
By the court: Sustained.
By [the State]: Nobody has ever said that Mr. Millbrooks might have been the shooter. It's never been an issue.
By the court: Well, sustained as to the relevance, as to whether he owned a gun. He said  he answered he owned no gun.
By [the defense]: Your Honor, it will become highly relevant.
By the court: All right, sir.
By [the defense]: We will have a case in chief.
By the court: All right, sir.
Raiford argues that the court's ruling was error because Millbrooks's admission that he owned a gun before the shooting would have corroborated Raiford's testimony that Millbrooks showed him a gun and threatened him in the days before the shooting. Raiford argues that this corroboration would have supported a conclusion that he accidentally killed Henley when defending himself from Millbrooks because, when he approached the apartment and saw Millbrooks with a gun, he reasonably apprehended that Millbrooks would shoot him.
¶ 13. Mississippi Code Annotated § 97-3-15 (Rev.2000) provides that the killing of a human being is justifiable "[w]hen committed in the lawful defense of one's person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished." When self-defense is raised, it is the jury's role to pass upon the reasonableness of the defendant's actions and, therefore, the jury is "entitled to be made fully aware of all relevant facts which reflect apprehension, fear or anxiety in his state of mind." Brown v. State, 464 So.2d 516, 518 (Miss.1985). Evidence is relevant when it has any tendency to make any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. M.R.E. 402. Testimony that the alleged aggressor habitually carried a gun and that the accused was aware of that fact is admissible so that the jury may determine whether the accused had a reasonable cause to apprehend danger. Stoop v. State, 531 So.2d 1215, 1219-20 (Miss.1988).
¶ 14. Raiford argues that evidence showing Millbrooks owned a gun before the shooting would have tended to show that Millbrooks previously threatened Raiford with a gun, which caused Raiford to reasonably apprehend that Millbrooks was about to shoot him on July 8. Given Raiford's testimony that Millbrooks previously threatened him with a gun, whether or not Millbrooks owned a gun at the time of the alleged threats was relevant because it tended to increase or decrease, however minimally, the probability of the truth of Raiford's testimony supporting his defense of self-defense. Therefore, the trial court abused its discretion when it prohibited the question on Millbrooks's prior gun ownership.
*1004 ¶ 15. We find that the erroneous exclusion of Millbrooks's answer was rendered harmless by Millbrooks's other testimony. Whether a violation of the confrontation clause in a particular case may be classified as harmless error depends upon a number of factors. Van Arsdall, 475 U.S. at 684, 106 S.Ct. 1431. "These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Id.
¶ 16. Because no proffer was made, for purposes of this analysis, we assume that Millbrooks would have answered affirmatively that he owned a gun before the day of the shooting.[1]See id. Millbrooks's gun ownership before the shooting had little probative value when viewed in conjunction with Millbrooks's other testimony. Millbrooks stated that he had seen Raiford for the first time on July 6 at Henley's apartment. On July 6, Raiford spoke briefly to Henley and then left. Millbrooks's description of the events of the July 6 encounter did not include his speaking to Raiford or making any threats to Raiford. Millbrooks's testimony embraced the proposition that Millbrooks had not confronted Raiford two weeks prior to Henley's death and had not threatened to shoot Raiford on July 6. Adding to this testimony the fact that Millbrooks owned a gun before July 8 would not have materially increased the likelihood that Millbrooks showed Raiford a gun two weeks before Henley's death or that he threatened Raiford on July 6. Therefore, the error in excluding the testimony was harmless. Our conclusion is supported by the fact that, given Johnson's eyewitness testimony, the evidence that Raiford murdered Henley was overwhelming. Jefferson v. State, 818 So.2d 1099, 1104(¶ 10) (Miss.2002).

II. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE DEFENSE MOTION FOR A NEW TRIAL OR A JUDGMENT NOTWITHSTANDING THE VERDICT AS THE WEIGHT OF THE EVIDENCE DID NOT SUPPORT THE JURY'S VERDICT.
¶ 17. While the sufficiency of the evidence is challenged by a motion for a judgment notwithstanding the verdict, the weight of the evidence is challenged by a motion for a new trial. In Raiford's statement of the issues, he indicates that he is appealing the issues of both the weight and the sufficiency of the evidence. However, in the body of the argument Raiford expressly states that his argument addresses only the weight of the evidence. Therefore, we limit our review to the trial court's denial of Raiford's motion for a new trial.
¶ 18. A motion for a new trial is addressed to the trial court's sound discretion, and should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict. Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000). When reviewing the denial of a motion for a new trial, we view all of the evidence in the light most favorable to the verdict. Herring v. State, 691 So.2d 948, 957 (Miss.1997). We will only reverse the denial of a motion for a new trial when the verdict is so contrary to the overwhelming weight of the evidence *1005 that to allow it to stand would be to sanction an unconscionable injustice. Id.
¶ 19. Viewing the evidence in the light most favorable to the verdict, we can readily say that no unconscionable injustice resulted from the jury's verdict in this case. The defense did not dispute that Raiford fired the fatal shot. The only dispute was whether Raiford accidentally killed Henley when defending himself from Millbrooks or whether he killed Henley with deliberate design. Johnson testified that she saw Raiford shoot Henley in the back, approach her as she lay on the ground, and shoot her in the head. All the witnesses that had been in Henley's apartment testified that Millbrooks was in the apartment when Henley and Johnson departed for the store, and they all testified that Millbrooks was in the apartment when they heard shots fired. Raiford's statements to the police about a physical altercation with Millbrooks before the shooting on July 8 substantially contradicted his trial testimony that no physical altercation occurred. The jury's verdict that Raiford was guilty of murder did not preponderate against the evidence.
¶ 20. Raiford argues that certain evidentiary inconsistencies render the verdict against the overwhelming weight of the evidence. He argues that Johnson's testimony that Henley turned her head to the left before being shot was inconsistent with the evidence that Henley was shot behind the left ear. Raiford argues that, if Henley's head was turned to the left as stated by Johnson, her left ear would have been pressed to the ground and, thus, Raiford could not have shot her behind the left ear while standing over her. While Johnson's testimony about the direction in which Henley turned her head was inconsistent with the location of the bullet wound, it was reasonable for the jury to disregard this inconsistency in light of Johnson's other credible testimony. Raiford also points out that Davis stated that she did not know where Millbrooks was at the time she realized Henley had been shot. But, Davis also testified that Millbrooks was in the apartment and rushed to the door when they heard shots fired, which, logically, occurred before Davis went outside and realized that Henley had been shot. Other aspects of the evidence addressed by Raiford in his brief are likewise inconsequential and did not operate to render the verdict against the overwhelming weight of the evidence. We affirm the trial court's denial of Raiford's motion for a new trial.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] When a party is improperly prohibited from cross-examining a witness, no offer of proof is necessary to preserve error. M.R.E. 103 cmt.