## S05A0369. GREEN v. THE STATE.
### (614 SE2d 751)

BENHAM, Justice.

In his 2003 trial, appellant was convicted of a series of crimes, including malice murder, that took place on September 12, 1999, and another series of crimes that took place on August 10, 1999. He appeals the judgment of conviction entered on the jury's guilty verdicts.[1]

1. The State presented evidence that a couple walking in downtown Savannah on August 10, 1999, was accosted and robbed by a man armed with a pistol who demanded and took their wallet and

---

[1] Appellant was arrested on September 24, 1999, and was charged in a true bill of indictment returned December 8, 1999, with malice murder, aggravated battery, four counts of aggravated assault, two counts of armed robbery, and four counts of possession of a firearm during the commission of a crime. The State filed notice of intent to seek the death penalty, and this Court completed a pre-trial interim review in September 2002. *Green v. State*, 275 Ga. 569 (570 SE2d 207) (2002). Appellant's trial commenced on January 31, 2003, and concluded on February 14, 2003, when the jury returned its guilty verdicts with a recommendation that a sentence of life imprisonment without the possibility of parole be imposed for the malice murder conviction. On March 7, 2003, the trial court sentenced appellant to life imprisonment without the possibility of parole for the malice murder conviction and consecutive and concurrent terms of years for the three aggravated assault convictions, the two armed robbery convictions, and the four convictions for possession of a firearm during the commission of a crime. Appellant timely filed a motion for new trial on February 24, 2003, and filed amendments thereto on January 27 and May 3, 2004. A hearing was held on March 16, 2004, and the trial court denied the amended motion on August 10, 2004. A notice of appeal was timely filed the following day, and the appellate record was docketed in this Court on October 26. Oral argument was heard on February 14, 2005.

purse and physically assaulted the male victim. On September 12, 1999, a man armed with a sawed-off shotgun demanded the wallets of another couple walking in downtown Savannah and fired a shot when the female victim screamed. Gail Vasilkioti was struck by the shotgun blast and died six weeks later from complications arising from her injuries. At the time of the incidents, appellant worked at a restaurant within blocks of both scenes. Both victims of the August robbery identified appellant as the armed man, and a cellular phone last seen in the purse of the female victim of the August robbery was found in appellant's home. The surviving victim of the September incident identified appellant as the man who had approached him and shot his companion. Several of appellant's acquaintances and co-workers testified he told them he had shot a woman tourist. One acquaintance approached police with information after a reward was offered, and police outfitted him with a hidden device that recorded appellant recounting the details of the September 12 shooting. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred when it denied his motion to sever the charges stemming from the August 10 incident from the charges arising out of the September 12 incident. In its order, the trial court recognized there is an absolute right to severance where offenses have been joined solely on the ground that they are of the same or similar character (see *Dingler v. State*, 233 Ga. 462, 464 (211 SE2d 752) (1975)), but severance is within the trial court's discretion when the offenses are so similar as to show a common scheme or plan. The trial court also noted that when the crimes alleged were a series of similar transactions conducted over a short period of time, denial of severance was appropriate "[a]fter balancing the interests of the State and those of the accused." The trial court denied the motion after determining the events were so similar that evidence of one would be admissible as evidence of a similar transaction in the trial of the other. Appellant contends the trial court did not apply the correct standard, found in *Stewart v. State*, 277 Ga. 138 (587 SE2d 602) (2003), to evaluate the motion to sever.

*Stewart* was decided in September 2003, more than two years after the trial court in the case at bar had denied the motion to sever and seven months after appellant was convicted. Under the "pipeline" rule adopted in *Taylor v. State*, 262 Ga. 584 (3) (422 SE2d 430) (1992), we apply to the case at bar *Stewart*'s statement of the trial court's responsibility when presented with a motion to sever charges. In *Stewart v. State*, we reiterated the principle that a defendant has an absolute right to severance of charges that are joined solely because they are of the same or similar character. Id. at 139. We also

endorsed the view that severance is not mandatory when offenses have been joined because evidence of one offense could be admitted upon the trial of another offense to show a common motive, plan, scheme, or bent of mind. Id. at 140. In the latter circumstance, the decision whether to sever falls within the discretion of the trial court, which should grant a pre-trial severance if it is "appropriate to promote a fair determination of the defendant's guilt or innocence of each offense . . . consider[ing] whether in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." Id. at 139 (quoting the ABA Standards on Joinder of Offenses). After being apprised of Stewart in connection with appellant's motion for new trial, the trial court re-examined its denial of the motion to sever and determined that the two incidents, while similar enough to qualify as similar transactions, were not so alike as to cause confusion in the minds of the jurors and make them unable to fairly and intelligently judge the offenses independently. While Stewart calls for the trial court's post-trial analysis to take place pre-trial, we agree with the post-trial analysis and, accordingly, find no reversible error in the denial of the motion to sever.

3. Appellant next contends the trial court abused its discretion when, according to appellant, the trial court admitted evidence of similar transactions. Appellant maintains the admission of evidence concerning the August 10 crimes was improperly admitted to prove the commission of the September 12 crimes. However, the trial court did not admit evidence of the August 10 incident as a similar transaction — it admitted evidence of crimes for which appellant was being tried. There is no merit to appellant's suggestion of error.

4. Appellant also takes issue with the denial of his motion to suppress the testimony of the survivor of the September 12 incident identifying appellant as the perpetrator.[2] Because the victim identified appellant at trial as the perpetrator, we read appellant's enumeration of error to take issue with the admission of the victim's in-court identification of appellant on the ground that pre-trial

---

[2] The trial court ruled appellant's contentions about pre-trial identification were without merit because this Court had conducted a pre-trial interim review of the case pursuant to OCGA § 17-10-35.1 of the Unified Appeal Procedure and had not modified the trial court's rulings on the issue. However, the ruling on the motion to suppress was not among the subjects of the interim review (see Green v. State, supra, 275 Ga. 569), and "[t]he failure of either party to assert the rights given in this Code section, or the failure of the Supreme Court to grant review shall not waive the right to posttrial review of any question review of which could be sought under this Code section and shall not constitute an adjudication as to such question." OCGA § 17-10-35.1 (h).

identifications of appellant by the victim were impermissibly suggestive.

At the time of the incident, the victim described the assailant as a black male with "chiseled features" who was 6'2" tall. At trial, the victim testified he and the other victim were in the road and the assailant was in bushes on a curb. The victim stated he had been presented with a photo array after the incident and had been unable to identify anyone as the shooter. The victim saw a televised news account of appellant's arrest 12 days after the incident and testified his initial reaction was "the hairline is good, the eyes are good, but he's too young, he's too short, he's too baby-faced." The victim stated he also saw a photo of appellant in the newspaper. The victim/witness then went to the scene of the incident with the other victim's adult son who was the same height as appellant and discovered the lighting in the area produced "chiseled features" and the combination of the crowned road[3] and the curbing resulted in the victim believing the son was taller than he actually was. The victim testified he identified appellant as the perpetrator at a preliminary hearing on November 29, ten weeks after the incident, acknowledging appellant was the only black man in jail attire in the courtroom. At trial, the victim identified appellant as the attacker and said his identification was based on a combination of his observations the night of the crimes and the televised news report of the arrest.

Appellant contends the witness's viewing of appellant in the televised news report was impermissibly suggestive and tainted the witness's identification of appellant. An allegedly suggestive pretrial encounter must be the result of either police or prosecution action to have an effect on the admissibility of a subsequent in-court identification. *Semple v. State*, 271 Ga. 416 (2) (519 SE2d 912) (1999). See also *State v. Reid*, 91 SW3d 247, 272 (Tenn. 2002); *People v. Owens*, 97 P3d 227, 233 (Colo. App. 2004); Talutis, "Admissibility of In-Court Identification as Affected by Pretrial Encounter that Was Not Result of Action by Police, Prosecutors, and the Like," 86 ALR5th 463 (noting that the majority of courts require state action in order for an allegedly suggestive pretrial encounter to affect the admissibility of an in-court identification). In the absence of evidence that police or prosecutors were involved with having appellant's arrest televised and having the surviving victim watch the televised report, there is no evidence of state action and, concomitantly, no due process violation in permitting an in-court identification following the witness's viewing of the televised report.

---

[3] The victim described the road as being higher in the middle and descending to the gutters on either side of the street.

Appellant also contends the in-court identification was tainted by the witness having identified appellant at the preliminary hearing in November 1999, when appellant was the lone black man in jail attire in the courtroom. Assuming for the sake of argument such an encounter is impermissibly suggestive, we note the victim testified he was basing his in-court identification of appellant on what he observed the night of the crime and his viewing of the televised report. " '[E]ven if a pretrial identification is tainted, an in-court identification is not constitutionally inadmissible if it does not depend upon the prior identification, but has an independent origin. (Cit.)' [Cit.]" *Wilson v. State*, 275 Ga. 53, 59 (3) (562 SE2d 164) (2002). Since the victim's in-court identification had an origin independent of the identification of appellant at the preliminary hearing, there was no violation of due process in the admission of the witness's in-court identification of appellant as the perpetrator.

5. Lastly, appellant contends he was denied the effective assistance of trial counsel. He maintains his attorneys, both experienced criminal defense attorneys, were deficient in that they allegedly failed to investigate the facts and the law adequately, failed to call certain witnesses, failed to meet with appellant "an adequate number of times," and failed to review discovery with him. The attorneys testified at the hearing on the motion for new trial that they had interviewed the out-of-state witnesses appellant believed should have testified and determined their testimony would not have been helpful to appellant. Lead trial counsel testified "it would have been foolish" to call as a witness the Savannah resident appellant claims should have been called to testify because he might have made an in-court identification of appellant as the person he had seen carrying a rifle shortly before the fatal armed robbery. Trial counsel testified they discussed these matters with appellant, who agreed with their trial strategy not to call these persons as witnesses. Lead counsel testified he had "full discovery" in the case and provided all of it to appellant. In the order denying appellant's motion for new trial, the trial court found there was no evidence to support appellant's contentions of deficient performance. After reviewing the record, we agree. Inasmuch as appellant must prove deficient performance that resulted in actual prejudice to prevail on a claim of ineffective assistance of counsel (*Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)), and appellant has not proven deficient performance, his claim fails. *Cain v. State*, 277 Ga. 309 (4) (588 SE2d 707) (2003) (an insufficient showing of either deficient performance or actual prejudice relieves the reviewing court of the need to address the other prong).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 16, 2005.

*Martin G. Hilliard,* for appellant.

*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney, Thurbert E. Baker, Attorney General, Vonnetta L. Benjamin, Assistant Attorney General,* for appellee.