## A05A1499. ROLLINSON v. THE STATE.
### (623 SE2d 211)

SMITH, Presiding Judge.

Everette Rollinson was found guilty by a Tattnall County jury of armed robbery and furnishing a pistol to a minor. Following the denial of his amended motion for new trial, he appeals from the conviction and sentence entered on the jury's verdict. He raises five enumerations of error, none of which we find meritorious. We therefore affirm the judgment.

Construed to support the verdict, the evidence introduced at trial showed that on March 30, 2000, Bobby Berry, Rollinson's former schoolmate, dropped by Rollinson's home and asked Rollinson for a ride. Without inquiring into the reason for the ride, Rollinson acceded. He drove Berry to a home near a particular church building and waited outside for Berry. Approximately 15 to 20 minutes later Berry returned and entered the car, and Rollinson drove home. Later that evening, Berry returned and gave Rollinson $600, which Rollinson believed was to pay him back for a loan.

In the course of investigating two armed robberies of filling stations in Reidsville occurring eight days apart in March 2000, Georgia Bureau of Investigation Agent Vickie Horton Tapley arrested three individuals whose statements implicated Rollinson. Tapley sought him out for questioning. On April 4, 2000, Rollinson learned that law enforcement officers were looking for him and voluntarily went to the Reidsville police station. In a taped interview conducted by Tapley, Rollinson admitted that Berry had awakened him in the early morning hours of March 22, 2000, shortly before the first of the two robberies took place. Rollinson admitted that he provided Berry, a minor, with a gun, but he denied knowing that a robbery would shortly take place, even though his cousin had participated.

After concluding the interview, Tapley turned off the tape recorder. Before Rollinson left the room, however, on a "whim" Tapley asked him to tell her about the second robbery she was investigating, which occurred on March 30, 2000, the date on which Rollinson had given Berry the ride. In that crime, the owner of a BP filling station was robbed at gunpoint in his front yard after closing the station. To Tapley's surprise Rollinson began discussing that robbery. Rollinson denied foreknowledge of either robbery but admitted that he gave Berry a ride to the neighborhood where the owner of the BP station was robbed. Rollinson also stated that when Berry returned to the car he was carrying a bank bag and a gun[1] and that Berry gave him $600. The interview ended because Rollinson had to leave. Tapley and

---

[1] This was not the gun Rollinson had previously given Berry.

another officer followed Rollinson home, where he surrendered the gun he had given to Berry.

Later the same day, Rollinson was arrested and charged with armed robbery and furnishing a handgun to a minor. Approximately $650 was found on his person. After being read his *Miranda* rights, Rollinson refused to answer any more questions. The following day, after being read his *Miranda* rights again and signing a waiver, another taped interview took place.

The victim of the March 30 robbery testified that he closed the BP station, drove home, and was still parked in his driveway when a single black male gunman wearing a bandanna over his face approached on foot, showed him a gun, and demanded his money. The victim gave the robber the bank bag that held the cash from the BP station and watched him run through the neighborhood toward the same church where Rollinson had told Tapley he waited for Berry. The victim called 911, then drove around the neighborhood looking unsuccessfully for the robber. The responding police officers, using a trained dog, tracked the robber's scent to the approximate location of the church where Rollinson had been parked.

Before Rollinson's trial, Berry was tried and acquitted of the March 22 robbery at the Chevron gas station. Rollinson was not charged in that robbery, but he testified at Berry's trial that he had furnished Berry with the gun. Berry and Rollinson were both charged with the March 30, 2000 armed robbery of the BP station owner.

1. In his first four enumerations, Rollinson complains on several different grounds of the trial court's failure to exclude certain evidence.

(a) Rollinson first contends that the trial court erred in denying his motion in limine to exclude any reference to the March 22 robbery. He argued below and now argues on appeal that evidence of the earlier robbery was irrelevant to the charged crime of armed robbery and that it was unduly prejudicial. We agree with the trial court that because Rollinson admitted that he furnished the handgun used in the first robbery, evidence of that robbery would be "impossible" to separate from his admission about the gun.

Moreover, although Rollinson was not charged with the March 22 armed robbery, he *was* charged with giving Berry the handgun used in that robbery. His admission that he gave Berry the gun was therefore related materially to that robbery. The first robbery was a part of the res gestae of the crime of furnishing a gun to a minor.

> It is well settled in this state that acts are pertinent as a part of the *res gestae* if they are done pending the hostile enterprise, and if they bear upon it, are performed whilst it is in continuous progress to its catastrophe, and are of a nature to

promote or obstruct, advance or retard it, or to evince essential motive or purpose in reference to it.

(Citation and punctuation omitted.) *Baird v. State*, 207 Ga. App. 44, 45 (1) (427 SE2d 37) (1993).

Contrary to Rollinson's argument, the March 22 robbery was not a "similar transaction" for which the State was required to give notice. Rollinson's reliance on *Story v. State*, 196 Ga. App. 590-591 (396 SE2d 547) (1990), is therefore misplaced. It is undisputed that Rollinson gave Berry the handgun between midnight and 3:00 a.m. on March 22, 2000, shortly before the first armed robbery took place. Uniform Superior Court Rule 31.3 (E), which pertains to similar transactions, provides that "[n]othing in this rule is intended to prohibit the state from introducing evidence of . . . occurrences which are . . . immediately related in time and place to the charge being tried, as part of a single, continuous transaction." Rollinson's act of giving Berry the gun and the first armed robbery were so intertwined that they may be construed as part of a single, continuous transaction, particularly since Rollinson's admission that he furnished the gun to Berry was made while he was being questioned about the first armed robbery.

Rollinson also points to the statement of the prosecutor at Berry's trial that Rollinson was not charged in that case and had "nothing to do with it." It is true that Rollinson denied knowing that a robbery was about to occur when he gave Berry the gun, that he willingly surrendered the gun, and that he was not charged as a party to the March 22 armed robbery, but only with furnishing a gun to Berry. To prove the essential elements of the crime of furnishing a gun to a minor, however, the State was required to show that the minor to whom the gun was given was in possession of it. Because that gun was used in the first armed robbery, evidence of the events leading up to the first robbery satisfied this element.

Finally, the trial court gave the jury a limiting instruction, charging it to consider any evidence of the Chevron station robbery only as it related to the charge against Rollinson of furnishing a handgun to a minor. Given these circumstances, we conclude that the trial court did not err in denying Rollinson's motion in limine.

(b) Rollinson's second enumeration concerns evidence of his first taped interview, in which he admitted furnishing the gun to Berry. He maintains that this evidence was inadmissible because it was provided to him in discovery only nine days before trial. OCGA § 17-16-4 (a) (1) provides that the prosecution must disclose and make available such statements in its possession "no later than ten days prior to trial." But here, material from Rollinson's first taped interview was unexpectedly found nine days before trial in the file from the Chevron

robbery, and even though Rollinson was not charged with that crime, the prosecutor furnished him with this evidence as soon as it was found. In addition, some of the material belatedly furnished overlapped discovery material already provided, and Rollinson's second interview, which was disclosed at arraignment, made numerous references to the first interview.

OCGA § 17-16-6 gives the trial court broad discretion in fashioning remedies for violations of OCGA § 17-16-4. Under OCGA § 17-16-6, the trial court may grant a continuance, permit an inspection, or grant an interview. The evidence may also be excluded, but that extreme remedy is warranted only if prejudice or bad faith is shown. See *Corbin v. State*, 240 Ga. App. 788, 790 (525 SE2d 365) (1999). Included in the material furnished nine days before trial was Rollinson's admission that he gave the gun to Berry shortly before the Chevron robbery and his denial that he knew what Berry would do with the gun. This material could not have prejudiced Rollinson. His consistent trial strategy was always to admit that he unwittingly aided the first robbery by giving Berry the gun but knew about neither robbery beforehand; Rollinson so testified at Berry's trial. Nothing in this material surprised Rollinson. He did not request a continuance to study the disclosures; he immediately asked that the material be excluded from evidence. The trial court did not err in denying this request. *Tucker v. State*, 222 Ga. App. 517, 518 (3) (474 SE2d 696) (1996). Because the material in this discovery was not only known to Rollinson, but testified to by him at Berry's trial, any error was harmless. *Marshall v. State*, 230 Ga. App. 116, 119 (495 SE2d 585) (1998).

(c) Rollinson claims error in the trial court's denial of his motion in limine to exclude the testimony of a K-9 officer identified as a witness less than ten days before trial. We do not agree.

Under OCGA § 17-16-8 (a), the prosecutor is required to furnish to defense counsel a witness list "not later than ten days before trial." See *State v. Dickerson*, 273 Ga. 408, 410 (542 SE2d 487) (2001). Rollinson correctly notes that the purpose of the statute is to prevent a defendant from being surprised at trial by a witness he has not had an opportunity to interview. *Morris v. State*, 268 Ga. App. 325, 326-327 (601 SE2d 804) (2004). When we review a trial court's decision as to whether to impose sanctions or take other corrective measures for the State's failure to comply with discovery, the appropriate standard of review is abuse of discretion. *Brown v. State*, 236 Ga. App. 478, 481 (3) (512 SE2d 369) (1999). "Excluding evidence is a harsh sanction and should be imposed only when there is a showing of prejudice to the defense and bad faith by the State." (Citations, punctuation and footnote omitted.) *Fairbanks v. State*, 242 Ga. App. 830, 832 (2) (531 SE2d 381) (2000).

The State furnished a witness list to Rollinson when he was indicted. Five days before trial, the State served Rollinson with a supplemental witness list, which included the K-9 officer. But Rollinson was not surprised by the K-9 officer's testimony, having interviewed the officer by telephone before trial. Nor was Rollinson prejudiced by the officer's testimony. The officer testified that his dog tracked the robber's scent from the victim's front yard through the neighborhood and lost the scent near the church, where the officer assumed the robber must have entered a vehicle. This testimony actually *supported* Rollinson's claim that he provided only a ride for Berry and waited for him near the church. As noted above, a trial court has broad discretion with regard to remedies for discovery violations. OCGA § 17-16-6. Given the lack of surprise and the fact that the officer's testimony dovetailed with Rollinson's defense, we cannot agree that the trial court erred in denying Rollinson's motion in limine to exclude the testimony.

(d) Rollinson challenges the trial court's ruling that the statements he made on April 4-5, 2000, were knowing and voluntary and therefore admissible at trial. He argues that the second part of the April 4, 2000 interview was a custodial interrogation that required *Miranda* warnings.

It is undisputed that Rollinson was not given *Miranda* warnings for this unrecorded interview. The trial court determined that the interview was noncustodial, and Tapley's testimony supports that conclusion. She testified that Rollinson first came to the police station voluntarily, and she informed him he was not in custody and was free to leave whenever he wished. The statements Rollinson made after Tapley turned off the tape recorder were not any different in nature from those he made earlier, when the recorder was on. He still was not in custody, and he was, in fact, permitted to leave to check on his younger brother. Because the trial court determined that his statements on April 4, 2000 were noncustodial, failure to give *Miranda* warnings did not preclude admission of statements. *Max v. State*, 249 Ga. App. 719, 721 (549 SE2d 510) (2001).

Rollinson was arrested later that day, he was given the *Miranda* warnings, and he did not make another statement that day. The following day, Agent Tapley again advised Rollinson of his rights and he signed a *Miranda* waiver before giving another statement. The trial court found that the statement given during this interview was custodial but freely and voluntarily given.

Contrary to Rollinson's contention, the fact that he was told he would be arrested if he refused to talk to the police officers does not amount to coercion making his statements inadmissible. Such statements are "in the nature of a mere truism"; they simply made Rollinson "aware of potential legal consequences." *Davis v. State*, 245

Ga. App. 508, 509 (538 SE2d 159) (2000). See *Carswell v. State*, 268 Ga. 531, 533 (2) (491 SE2d 343) (1997).

Some of the circumstances surrounding the interviews are also in dispute; Rollinson's testimony is in conflict with that of Agent Tapley. In the trial court, the State has the burden of showing the voluntariness of a confession by a preponderance of the evidence. *Bright v. State*, 265 Ga. 265, 280 (5) (b) (455 SE2d 37) (1995). As a reviewing court, we must accept the trial court's factual determinations unless they are clearly erroneous. Id. Here, the trial court's determination that Rollinson's statements were knowing and voluntary is supported by Agent Tapley's testimony, and it is therefore not clearly erroneous.

2. Rollinson asserts that the trial court erred in denying his motion to sever the two charged offenses. He argues that they were based upon incidents unrelated in time and character and posed a great risk of prejudice resulting from the jury's potential confusion of the two incidents. We do not agree.

"[T]here is an absolute right to severance where offenses have been joined solely on the ground that they are of the same or similar character, but severance is within the trial court's discretion when the offenses are so similar as to show a common scheme or plan." (Citation omitted.) *Green v. State*, 279 Ga. 455, 456 (2) (614 SE2d 751) (2005). The court must consider "whether in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." (Citation and punctuation omitted.) Id. at 457 (2).

Applying these principles, we find no abuse of discretion. The two charged offenses were closely connected in time and place. Both occurred in Reidsville under cover of darkness within eight days of each other. Both involved filling station/convenience stores. In both, Rollinson was shown to have aided Berry in carrying out the armed robberies. The evidence therefore demonstrated a series of connected acts that were part of a common scheme.

Even if the two charges had been severed, each would have been admissible as a similar transaction in a trial on the other, because proof of one tends to prove the other. And "[t]he criteria for the introduction of similar transactions . . . are considerably more rigorous than the evidentiary standard for determining 'similarity of conduct' for purposes of joinder." (Citations, punctuation and footnote omitted.) *Brown v. State*, 230 Ga. App. 190, 194 (2) (495 SE2d 858) (1998). The trial court did not err in denying Rollinson's motion to sever.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED NOVEMBER 15, 2005.

DuAnn C. Davis, Glen A. Cheney, for appellant.

Tom Durden, District Attorney, Sandra Dutton, Assistant District Attorney, for appellee.