# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01479-COA

**GREGORY FARMER**                                                     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/15/2018 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/12/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., GREENLEE AND LAWRENCE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. Gregory Farmer was convicted by a jury of sexual battery in the Bolivar County Circuit Court. The court sentenced him to serve twenty years in the custody of the Mississippi Department of Corrections. Farmer appeals, claiming that (1) he was denied the opportunity to present his defense and that (2) a pre-trial identification made by the victim was overly suggestive and tainted the victim's subsequent in-court identification. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     In December 2016, a man pushed eleven-year-old Sally Jones[1] into an ally behind a

local grocery store and forced Sally to engage in non-consensual sexual intercourse. Sally

did not immediately report the incident.

¶3.     Around one month after the attack, Sally visited Rita Smith's office, Sally's school

counselor, because she was having a "bad day." There, Smith suggested that Sally should

write down everything that was bothering her. Smith then handed Sally a school journal, and

Sally wrote the following two entries:

> Bo Chris G-Boy c[aught] me while I[] [was] going or coming from the store
> and ma[de] me go in the ally behind [the store]. He pull[ed] my clothes and
> his [clothes] down and force[d] me to let him put his private part inside of me.
> He threaten[ed] me by saying [that] if I t[old] anyone [that] he[] [was] going
> to kill me and my family.
>
> Rabbit [is] another man who did something like this to me. E[x]cept he didn't
> force me to put his private part inside of me. He just touched my private part
> and made me touch his[.]

After discussing her entries with Smith, Sally told Smith that she needed to write down more

information. Smith then handed the journal back to Sally, and Sally erased the names on the

first line that read "Bo Chris G-Boy."

¶4.     After their conversation, Smith generated an online report, which was submitted to

the Mississippi Department of Child Protection Services. The report detailed Sally's name,

the names of Sally's family members, "Christopher Farmer" as the perpetrator, and a

description of the events. Smith testified at trial that she listed Christopher Farmer as the

perpetrator of the crime based on the name ("Chris"), which was written in the first journal

---

[1] A fictitious name is used to protect the minor's identity.

entry but erased, and gave a description of the individual. Smith testified that she was familiar with Christopher Farmer. Smith then contacted Tricia Jones,[2] Sally's mother.

¶5. At the school, Smith informed Jones about her meeting with Sally. Jones later reported the incident to Michael Williams, an investigator for the Bolivar County Sheriff's Department.

¶6. Investigator Williams was notified of the incident on January 23, 2017. After a discussion with Jones, Investigator Williams scheduled a forensic interview with the Mississippi Children's Advocacy Center. During his investigation, Investigator Williams visited the crime scene and took photographs. He also visited Sally's middle school to acquire Sally's journal. At trial, Investigator Williams testified that based on the information presented to him from Jones's disclosures and Sally's journal entry he was able to develop two suspects, Gregory Farmer (nicknamed "G-Boy") and Christopher Farmer (nicknamed "Bo").

¶7. Jones testified that she initially associated both nicknames ("Bo" and "G-Boy") with Gregory Farmer. This understanding changed, however, after Investigator Williams discovered that "Bo" and "G-Boy" were different people. To resolve the identity discrepancy, Jones, on her own volition, showed Sally a photograph of Gregory Farmer and a photograph of Christopher Farmer on her cellphone. After viewing the men, Sally identified Gregory Farmer as her assailant. Jones then relayed this information to Investigator Williams; the State subsequently charged Gregory Farmer (hereinafter "Farmer")

_____

[2] A fictitious name is also used to refer to Sally's mother to protect the identity of the minor.

with sexual battery.

¶8. Farmer was indicted by a grand jury on August 28, 2017. The case was initially tried in October 2017, but the jury could not agree on a verdict. As a result, the circuit court ordered a mistrial and continued the cause for a subsequent date. The case was re-tried one year later on October 1, 2018. At the second trial, the State presented three witnesses: Investigator Williams, Tricia Jones, and Sally Jones. Following the State's case-in-chief, Farmer moved for a directed verdict. That motion was denied. Farmer then presented Rita Smith as his only witness. Farmer did not testify in his own defense.

¶9. At the end of the second trial, the jury found Farmer guilty of sexual battery under Mississippi Code Annotated section 97-3-95 (Rev. 2014). Farmer was then sentenced to a twenty-year term to be served in the custody of the Mississippi Department of Corrections. Farmer moved for judgment notwithstanding the jury verdict or for a new trial, which was denied. Farmer now appeals his conviction and twenty-year sentence for sexual battery to this Court.

## DISCUSSION

### I. Whether excluding evidence of the potential separate attacker deprived Farmer of his right to present a defense.

¶10. During Farmer's opening statement, defense counsel referenced James Jackson (nicknamed "Rabbit") as a potential perpetrator of the crime. The State did not object. After both parties completed their opening statements but before the State called its first witness, the State offered an objection requesting the court to exclude any evidence that Farmer intended to present to the jury pertaining to Rabbit (i.e., the additional journal entry).

4

According to the State, the additional journal entry referred to a separate and distinct incident unrelated to the instant case. In response, Farmer argued that his theory was that Sally misidentified her attacker and that he should be allowed to cross-examine her about Rabbit. Following a bench conference, the court excluded Sally's additional journal entry, finding the evidence to be "clearly distinguishe[d]" from her first entry, and restricted defense counsel from explicitly asking Sally about Rabbit and the separate incident.

¶11.    Farmer now argues that the circuit court erred by not permitting him to cross-examine Sally about the additional journal entry. The State contends that any evidence regarding Rabbit was inadmissible under Mississippi Rules of Evidence 401, 402, and 403. We agree with the State.

¶12.    "The right to cross-examination is secured by the confrontation clause of the Sixth Amendment to the Constitution of the United States, made enforceable against the states by the Fourteenth Amendment." *Raiford v. State*, 907 So. 2d 998, 1001 (¶8) (Miss. Ct. App. 2005) (citing *Black v. State*, 506 So. 2d 264, 266 (Miss. 1987)). Article 3, Section 26 of the Mississippi Constitution independently establishes this right, "and has been considered to be co-extensive with the limits of relevancy." *Id.*; *see* M.R.E. 611(b). While defense counsel has wide latitude in cross-examination, "the trial court in its discretion has the inherent power to limit cross-examination to relevant matters." *Mixon v. State*, 794 So. 2d 1007, 1013 (¶20) (Miss. 2001). The standard of review for the trial court's relevancy ruling limiting cross-examination is abuse of discretion. *Zoerner v. State*, 725 So. 2d 811, 813 (¶7) (Miss. 1998).

¶13.    Our supreme court has recognized that

litigants in all cases, including defendants in criminal prosecutions, are entitled to assert alternative theories, even inconsistent alternative theories. A criminal defendant is entitled to present his defense to the finder of fact, and it is fundamentally unfair to deny the jury the opportunity to consider the defendant's defense where there is testimony to support the theory.

*Terry v. State*, 718 So. 2d 1115, 1121 (¶28) (Miss. 1998) (citing *Love v. State*, 441 So. 2d 1353, 1356 (Miss. 1983)).

¶14. Even so, Farmer's right to present his defense is limited by considerations of relevance and prejudice. *See supra* ¶12. Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence more probable or less probable. M.R.E. 401. In making its decision, the circuit court implied that the evidence regarding Rabbit was irrelevant, but the court relied more heavily on Mississippi Rule of Evidence 403, finding that defense counsel's use of the evidence was a "design[] to mislead and confuse the jury."

¶15. We note that irrelevant evidence is not admissible. M.R.E. 402. But regardless of whether the evidence about Rabbit was relevant, we find that it was properly excluded under Mississippi Rule of Evidence 403. That rule states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, *confusing the jury*, *misleading the jury*, undue delay, wasting time, or needlessly presenting cumulative evidence.

M.R.E. 403 (emphasis added). It also vests considerable discretion with the trial court. *See Hooker v. State*, 716 So. 2d 1104, 1111 (¶25) (Miss. 1998).

¶16. Here, the circuit court did not abuse its discretion by excluding Farmer from presenting evidence about Rabbit. The only connection that Rabbit has to the instant case

6

is provided by the additional journal entry written by Sally. As mentioned above, that additional journal entry reads, "Rabbit is another man who did something like this to me. E[x]cept he didn't force me to let him put his private part inside of me. He just touched my private part and made me touch his[.]" As Farmer notes in his appellate brief, it is true the journal entries are written on the same page, but the journal entries are also undoubtedly divided by a sinuous line. The record further shows that Smith asked Sally to document *any* incidents that had occurred. In response, Sally wrote both journal entries. The record also shows that Investigator Williams asked Sally why she wrote a journal entry about Rabbit during a pre-trial interview. Sally answered: because Rabbit "sexually assaulted me too." We therefore find it abundantly clear that the two attacks are separate and distinct. We also reject Farmer's argument that Sally confused the incidents. In conclusion, we hold that the circuit court did not abuse its discretion by finding that Farmer's effort to use the evidence was an attempt to confuse or mislead the jury in violation of Mississippi Rule of Evidence 403. As such, Farmer was not deprived of his right to present a defense.

**II.    Whether the pre-trial identification was impermissibly suggestive and tainted the in-court identification.**

¶17.    Farmer also contends that Sally's viewing of him on her mother's cellphone was impermissibly suggestive and tainted Sally's subsequent in-court identification of Farmer. Farmer does not expressly claim that his due process right under the Fourteenth Amendment was violated, but he appears to argue as to such.

¶18.    In his brief, Farmer cites to the United States Supreme Court case *Neil v. Biggers*, 409 U.S. 188 (1972), and the Mississippi Supreme Court case *York v. State*, 413 So. 2d 1372

7

(Miss. 1982), to support his due process contention. In *York*, our supreme court stated:

> An impermissibly suggestive pretrial identification does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure, unless: (1) from the totality of the circumstances surrounding it (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Id.* at 1383 (citing *Biggers*, 409 U.S. at 199). To assess whether the pretrial identification was impermissibly suggestive, the court considered the following factors:

> [(1)] the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, [(2)] the accuracy of the witness' prior description of the criminal, [(3)] the level of certainty demonstrated by the witness at the confrontation, and [(4)] the length of time between the crime and the confrontation.

*Id.*

¶19. But while this standard remains, our United States Supreme Court has held that an eyewitness identification must be the product of police action. *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012) ("We have not extended pretrial screening for reliability to cases in which the suggestive circumstances were not arranged by law enforcement officers."). The pre-trial identification in the instant case was not the product of police or prosecutorial action.

¶20. In *United States v. Venere*, 416 F.2d 144, 146 (5th Cir. 1969), the defendants gave counterfeit money to a ticket seller, the eyewitness, at a stadium. The stadium's supervisor became aware of the situation and confronted the ticket seller, who advised the supervisor as to the identity of the appellants. *Id.* The supervisor thereafter located the defendants and asked them "to go to the first aid room of the [s]tadium." *Id.* There, the ticket seller

confirmed the identity of the two men as the men who had given him the counterfeit bills. *Id.* The police were then notified, and the men were arrested. *Id.* On appeal to the United States Fifth Circuit Court of Appeals, the appellants argued that an eyewitness (in this instance, the ticket seller) could not identify them at trial because the eyewitness's prior confrontation violated their rights to due process of law under the Fifth Amendment and their right to counsel under the Sixth Amendment. *Id.* at 148. Upon review, the court dismissed the appellants' arguments, finding that "the course pursued by the management of the [s]tadium . . . was an eminently rationale one, and well within the rights of a private citizen to respond to the apparent commission of the crime against himself." *Id.*

¶21. Similarly, in *Green v. State*, 614 S.E.2d 751, 752 (Ga. 2005), the defendant was convicted of a series of crimes that took place in August 1999 and another series of crimes that took place one month later in September 1999. Before trial, an eyewitness to one of the series of crimes identified the defendant in a "televised news report" that depicted the individual's arrest for his conduct concerning the other series of crimes. *Id.* at 754-55. On appeal, the appellant argued that the news report was impermissibly suggestive and tainted the witness's in-court identification of the appellant. *Id.* at 755. In disagreement, the Georgia Supreme Court dismissed the appellant's argument and held that "in the absence of evidence that police or prosecutors were involved with having appellant's arrest televised and having the . . . victim watch the televised report, there is no evidence of state action, and concomitantly, no due process violation in permitting an in-court identification following the witness's viewing of the televised report." *Id.*

¶22. Here, Sally's pretrial identification occurred when Sally identified Farmer as her assailant on Jones's cellphone. Sally made the same identification at trial. Jones testified that she voluntarily showed Sally the photographs of Christopher Farmer and Gregory Farmer. According to Jones, she wanted to know who committed the crime against Sally and if "she [was] going to be able to identify who [committed the act against] her." Investigator Williams testified that he did not instruct "anyone" to show Sally the photographs of Christopher Farmer and Gregory Farmer. He also stated that he did not give "advice" to or "suggest" anyone to show her the photographs. Therefore, we find based on the guidance provided by *Perry*, *Venere*, and *Green* that Sally's pre-trial identification was not impermissibly suggestive and did not taint her latter in-court identification. *Green*, 614 S.E.2d at 458 ("An allegedly suggestive pretrial encounter must be the result of either police or prosecution action to have an effect on the admissibility of a subsequent in-court identification.") (citing *Semple v. State*, 519 S.E.2d 912, 914 (Ga. 1999)). Accordingly, Farmer's right to due process of law was not violated. This issue is without merit.

## CONCLUSION

¶23. For the forgoing reasons, we affirm Farmer's sexual-battery conviction and the sentence imposed by the Bolivar County Circuit Court.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**